IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARIE ANTOINETTE BRANNAN, as administratrix for the Estate of Logan Goodman, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 17-0493-WS-M ) |
| JAMES C. WEST, *et al.*, | ) ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss First Amended Complaint (doc. 20), plaintiff's Motion to Allow Limited Discovery (doc. 24), and plaintiff's Motion to Conduct Discovery (doc. 27). The Motions have been briefed and are now ripe for disposition.

**I.     Background.**

This action arises from the death of Logan Goodman on March 24, 2017, while incarcerated at the Saraland Jail operated by the City of Saraland, Alabama. According to the well-pleaded allegations of the First Amended Complaint, Goodman was serving a brief sentence on a conviction for marijuana possession. (Doc. 17, ¶ 4.) Prior to March 24, 2017, Goodman had no history of mental instability, depression or suicidal behavior, nor had he ever exhibited symptoms of suicidal ideation. (*Id.*, ¶ 14.) Yet at approximately 4:34 p.m. that day, jail staff discovered Goodman alone and unconscious in his cell, having apparently hanged himself by a bedsheet tied to the door. (*Id.*, ¶¶ 13, 15, 17-18.) Mobile County EMS was notified immediately, arriving on the scene at 4:45 p.m. (*Id.*, ¶ 13.) Goodman was transported to a local hospital, where he died three days later. (*Id.*, ¶¶ 13, 17-18.)

On its face, the First Amended Complaint imputes sinister conduct to defendants and suggests that Goodman's death was the result of foul play. In particular, the pleading alleges that Saraland Police Detective Bryan Mims "conducted an intense and threatening interrogation" of

Goodman on March 23, 2017, one day before the purported suicide attempt, on allegations of receiving contraband (cigarettes). (*Id.*, ¶ 11.) On March 24, 2017, mere minutes before Saraland Police Department staff called emergency medical personnel to the jail for Goodman's suicide attempt, Saraland Police Sergeant Billy O'Dell called Marie Brannan and advised that she was being charged with promoting prison contraband, second degree, presumably in relation to Goodman (although the pleading does not make such a linkage explicit). (*Id.*, ¶ 12.) The First Amended Complaint also points to the observations of inmate Gregory Murphy that Goodman's demeanor was "completely upbeat as always" immediately before the purported suicide attempt, and further states that the attending physician opined that a bedsheet could not have made the ligature marks on Goodman's neck, and that Goodman had a defensive wound on his neck from a fingernail showing that he had attempted to struggle free. (*Id.*, ¶¶ 11, 15.) Roughly two hours after the purported hanging, Saraland Police officials notified Goodman's mother that he was "okay" when in fact the opposite was true. (*Id.*, ¶ 16.) Based on these facts, plaintiff's pleading theorizes that Goodman "never did attempt suicide," but that Detective Mims and Sergeant O'Dell, perhaps with the participation of others, "may have used excessive force to extract information from" Goodman while interrogating him. (*Id.*, ¶ 25.)

On the strength of these and other allegations, Marie Antoinette Brannan, the administratrix of Goodman's Estate, brought this action against defendants Saraland Police Chief James C. West, Detective Mims, Sergeant O'Dell, and the City of Saraland. The individual defendants are named solely in their individual capacities. Brannan asserts the following causes of action: (i) a claim against the individual defendants under 42 U.S.C. § 1983 for violating the Eighth and Fourteenth Amendments by being deliberately indifferent to Goodman's serious health needs and medical emergency (Count I); (ii) a § 1983 claim against defendant Chief West for violating the Eighth and Fourteenth Amendments by implementing or maintaining Saraland Jail policies or practices in a manner that directly resulted in the individual defendants' deliberate indifference to Goodman's serious health needs (Count II); (iii) a § 1983 claim against defendant City of Saraland for violating the Eighth and Fourteenth Amendments by failing to protect Goodman's right to be free from neglect, mistreatment, cruel and unusual punishment, abuse, and failure to address his serious medical needs (Count III); and (iv) a state-law wrongful death claim against all defendants for breaching their duty of care to protect Goodman from harm and

injury, and negligently permitting him to suffer from inadequate care in their custody, resulting in his death (Count IV).

Defendants now move to dismiss the First Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the ground that Brannan's pleading fails to state a claim upon which relief can be granted. Plaintiff counters by moving for a purportedly "limited" discovery period, after which plaintiff proposes that defendants be permitted to renew their dispositive motion pursuant to Rule 56, Fed.R.Civ.P.

**II.      Analysis.**

In their Motion to Dismiss and accompanying brief, defendants invoke the *Twombly* / *Iqbal* pleading standard, and forcefully argue that the First Amended Complaint falls short. To withstand Rule 12(b)(6) scrutiny and satisfy the minimum pleading requirements prescribed by Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly* / *Iqbal* principles demand that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted). The allegations "must ... state a claim for relief that is plausible—and not merely possible—on its face." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

Defendants maintain that none of Brannan's claims pleaded in the First Amended Complaint comport with this legal standard. Specifically, as to Count I (deliberate indifference against individual defendants), defendants argue that Brannan's pleading is devoid of factual allegations identifying an act or omission of any defendant that resulted in Goodman's death, or any facts showing deliberate indifference to Goodman's serious medical needs.[1] As to Count II (supervisory liability against Chief West) and Count III (municipal liability against the City), defendants contend that the First Amended Complaint is deficient because it fails to plead an underlying constitutional violation, fails to identify a policy or custom that caused Goodman's death, fails to allege facts showing that any such policy or custom was maintained with deliberate indifference to Goodman's constitutional rights, and the like. For Count IV (wrongful death), defendants seek dismissal under Rule 12(b)(6) because they assert that this claim lacks any facts plausibly showing that Goodman's death was the proximate, foreseeable result of defendants' conduct.

In response, plaintiff does not quarrel with the proposition that the First Amended Complaint fails to pass muster under *Twombly / Iqbal*. She advances no argument to the contrary. Indeed, by her own admission, Brannan "does not dispute that many of the facts in question … are conclusory statements that would not ordinarily rise to the level necessary to create facial plausibility for all of her claims." (Doc. 24, ¶ 2.) As such, plaintiff effectively concedes that her First Amended Complaint, as pleaded, is inadequate. For the reasons set forth in defendants' supporting memorandum (doc. 20, at 6-35), the undersigned agrees with that

---

[1] On this point, the Motion to Dismiss emphasizes the confusing and contradictory nature of Brannan's pleading. For example, Brannan alleges that defendants were deliberately indifferent to Goodman's health, safety and well-being, but in the next breath implies that Goodman did not commit suicide and acknowledges that he had no history of attempting or threatening suicide, or even depression or mental instability. How could defendants have been deliberately indifferent to Goodman's risk of committing suicide if they were not on notice of such a risk and if plaintiff denies that his death was a suicide at all? Moreover, as defendants point out, any inference of deliberate indifference is dissipated by the First Amended Complaint's recognition that defendants contacted Emergency Medical Services immediately upon discovering Goodman's condition, and that medical personnel arrived on the scene 11 minutes later, all of which is irreconcilable with a plausible theory of deliberate indifference. Defendants' Motion also correctly observes that the shadowy allegations of "excessive force" in the First Amended Complaint are so insubstantial, speculative and indefinite that they cannot give rise to a plausible claim for relief.

assessment. In the *Twombly / Iqbal* line of decisions, the Supreme Court required a baseline level of factual specificity for pleadings to satisfy Rule 8. The First Amended Complaint does not meet that minimum threshold. Plaintiff does not suggest otherwise.

Nonetheless, Brannan seeks to excuse the shortcomings in her pleading by insisting that she cannot meet her obligations under the *Twombly / Iqbal* standard unless she is permitted to engage in discovery. As Brannan puts it, "in order to make any further and specific factual allegation against the defendants as is the case here, Plaintiff must be able to conduct some or, at the very least, limited discovery." (Doc, 24, ¶ 5.) In that regard, Brannan complains that she is "at a factual disadvantage" because information concerning Goodman's death and the ensuing investigation is in the exclusive possession of defendants. (*Id.*, ¶ 6.) She remarks that "private parties are not normally privy to the inner workings of a police investigation," and protests that "[w]ithout limited discovery, it is nearly impossible to know more" than she has already pleaded. (*Id.*, ¶ 7.) On the basis of these stated concerns about information asymmetry and factual disadvantages, Brannan moves in two separate filings (docs. 24, 27) for leave of court to conduct "limited" discovery. She proposes a 120-day discovery period consisting of the following: (i) initial disclosures and written discovery limited to 10 interrogatories and 10 requests for production or requests for admissions; (ii) subpoenas of the Mobile County Sheriff's Office investigative file for Goodman's death;[2] (iii) depositions of parties concerning "the nature of the events surrounding decedent's death," or the corporate representative of the City of Saraland; (iv) depositions of any inmate witnesses; and (v) depositions or affidavits from hospital physicians, retained experts or the department of forensic science. (Doc. 27, at 3-4.) Plaintiff further proposes that upon completion of such discovery, defendants be granted an opportunity to renew their Rule 12(b)(6) Motion as a Motion for Summary Judgment, after which the litigation may move forward. (*Id.* at 3.)

Brannan's plan, then, would be to sidestep the *Twombly / Iqbal* pleading requirements until such time as she has the benefit of discovery to shore up the factual predicate of her claims. She reasons that proceeding in this manner would be fair and reasonable because the

---

[2] On this point, plaintiff writes, "It is unknown to what extent Plaintiff would be entitled to such information without a subpoena." (Doc. 24, ¶ 6.) Notably, plaintiff does not indicate that she has ever requested access to any investigative file maintained by the MCSO, much less whether such access was granted or denied.

investigative facts on which her claims rest are in defendants' possession at this time.  The fundamental difficulty with Brannan's proposed course of action is that the Supreme Court in *Twombly* and *Iqbal* was expressly motivated by the concern that "[d]iscovery imposes costs – not only on defendants but also on courts and society."  *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  Indeed, "a significant premise underlying *Twombly* and *Iqbal* is that a plaintiff ought not get a ticket to discovery – with its attendant burden and expense – unless the plaintiff can allege facts sufficiently supporting a claim."  *Southern-Owners Ins. Co. v. Whitley Contracting, Inc.*, 2014 WL 11512364, *1 (N.D. Fla. July 9, 2014).[3]  The preliminary, 120-day Rule 12(b)(6) discovery round championed by Brannan would stand at cross-purposes to the Supreme Court's stated objectives in fashioning the rules of *Twombly* and *Iqbal*.

More to the point, Brannan's proposal is in derogation of settled law.  The rule in this Circuit is that "discovery *follows* the filing of a well-pleaded complaint.  It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim."  *Carter v. DeKalb County, Ga.*, 521 Fed.Appx. 725, 728 (11th Cir. June 4, 2013) (citation and internal quotation marks omitted).  Indeed, the Supreme Court has stressed that the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and that where a "respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  *Iqbal*, 556 U.S. at 678-79 & 686.  Myriad authorities have expressly rejected plaintiffs' requests for initial discovery prior to evaluating a pleading under the standards established by *Iqbal* and *Twombly*.[4]  Thus, the protocol that

---

[3] *See also In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 625 (7th Cir. 2010) (explaining that *Twombly* and *Iqbal* are "designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand"); *Estate of Walter by and through Klodnicki v. Correctional Healthcare Companies, Inc.*, 232 F. Supp.3d 1157, 1164 (D. Colo. 2017) ("The standards for evaluating Rule 12(b)(6) motions, as stated in *Twombly* and *Iqbal*, are transparently motivated by the costs and other burdens of discovery.").

[4] *See, e.g., Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) ("Plaintiffs' experienced and knowledgeable counsel … could not say that Plaintiffs would be able to amend their complaint to allege acts by the Defendants … with the specificity required by *Iqbal*, absent discovery.  The Supreme Court has stated, however, that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."); *16630 Southfield*, 727 F.3d at (Continued)

Brannan proposes has been routinely turned aside by federal courts throughout the country as incompatible with the rule that discovery is available to a plaintiff only <u>after</u> her complaint satisfies the threshold requirements of Rule 8 and *Twombly* / *Iqbal*, not before. Simply stated, federal courts decline to impose the considerable burden and expense of discovery on defendants

---

504 (under *Twombly* / *Iqbal*, a plaintiff "could not proceed to discovery simply by making bare allegations that the defendants violated the law," but instead "he had to identify *facts* that plausibly supported this legal conclusion"); *Sherry v. Chioini*, 219 F. Supp.3d 608, 620 (E.D. Mich. 2016) ("a motion under Rule 12(b)(6) tests the sufficiency of the allegations in a complaint, and the motion is decided before (and without) discovery"); *In re Regions Morgan Keegan Securities, Derivative and Erisa Litigation*, 166 F. Supp.3d 948, 957 (W.D. Tenn. 2014) ("A plaintiff with no facts and armed with nothing more than conclusions cannot unlock the doors of discovery."); *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp.2d 1178, 1192 (S.D. Fla. 2013) ("Before plaintiffs can overcome a dismissal motion and be entitled to merits discovery, they must allege sufficient facts that, if taken as true, state a claim for relief. … Plaintiffs cannot merely recite the elements of their causes of action and suggest that discovery will permit them to set forth the facts supporting those elements."); *Canman v. Bonilla*, 778 F. Supp.2d 179, 185 (D.P.R. 2011) ("the price of entry, even to discovery, is for the plaintiff to allege a *factual predicate* concrete enough to warrant further proceeding, which may be costly and burdensome"); *Vanzant v. City of Highland Park*, 2016 WL 1698400, *2 (E.D. Mich. Apr. 28, 2016) ("But before Vanzant is allowed to take discovery, his Complaint must first meet the standards of *Iqbal* and *Twombly*."); *Briscoe v. Jefferson County*, 2011 WL 13185648, *5 (E.D. Tex. Dec. 14, 2011) ("discovery is not the place to determine if one's speculations might actually be well-founded … the pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation") (citation omitted); *Hammonds v. Boston Scientific, Inc.*, 2011 WL 13177632, *2 n.3 (W.D. Okla. Aug. 8, 2011) ("Reliance on a need for discovery, however, does not excuse plaintiff from adequately pleading her case under *Twombly* in the first place."); *Hammocks, LLC v. Harleysville Mut. Ins. Co.*, 2011 WL 3421415, *3 (W.D.N.C. Aug. 4, 2011) (*Twombly* and *Iqbal* "make clear that a plaintiff first must assert a *plausible* claim before being permitted to use the invasive and costly tools of discovery"); *Essex Ins. Co. v. Miles*, 2010 WL 5069871, *3 (E.D. Pa. Dec. 3, 2010) ("While we acknowledge that it may be difficult without discovery for a plaintiff to plead this type of claim in light of *Twombly* and *Iqbal*, … [t]he Supreme Court precludes the use of even limited discovery to overcome a pleading insufficiency."); *Rodriguez v. Quality Loan Service Corp.*, 2010 WL 1644695, *2 (D. Ariz. Apr. 22, 2010) ("Despite a lack of discovery, however, plaintiff must plead enough facts to state a claim to relief that is plausible on its face. … She cannot use discovery to conduct a fishing expedition in hope that some fact supporting an allegation will be uncovered.") (citation and internal quotation marks omitted).

against whom plaintiffs have no concrete factual allegations but only a desire to embark on a fishing expedition in search of facts that might inform their speculative claims.[5]

Insofar as Brannan seeks to evade defendants' Motion to Dismiss until she has obtained an initial round of discovery from defendants into the events surrounding Logan Goodman's death, that tactic cannot succeed. Only <u>after</u> she has pleaded sufficient facts to state plausible claims against defendants would plaintiff be eligible to commence any form of discovery. Brannan has essentially admitted that her First Amended Complaint does not meet the requisite plausibility standard. It is conclusory and speculative, unsupported by specific facts, and those

---

[5] In so concluding, the Court recognizes that limited discovery proposals along the lines of what Brannan is requesting have been debated and have found favor in certain quarters in the post-*Twombly/Iqbal* landscape. *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 619 n.2 (7th Cir. 2011) ("Proposals for some form of 'Rule 12(b)(6) discovery' have proliferated in academic circles in the wake of *Twombly* and *Iqbal*. … The theory underlying this effort is that the plausibility standard for surviving a motion to dismiss requires new tools to meet the higher bar, especially where the information necessary to survive a motion to dismiss is wholly or largely in the defendant's hands."); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (opining that "[w]here modest discovery may provide the missing link, the district court has discretion to allow limited discovery," and explaining that "the response to *Twombly* and *Iqbal* is still a work in progress; and we think that a limited remand is appropriate to allow Menard to explain to the district judge what basis he has to believe that narrow discovery is warranted"). However, the "academic circles" described by the Seventh Circuit in *McCauley* have not precipitated any firm rules authorizing "Rule 12(b)(6) discovery" in this Circuit or any other. Furthermore, the First Circuit's "modest discovery" rule, even if it were to be adopted by the Eleventh Circuit (which has not occurred and appears highly unlikely to occur), would not help Brannan because, unlike in *Menard*, the scope of the requested discovery here far exceeds the "modest discovery" contemplated by the First Circuit. These outlier proposals do not state the law in the Eleventh Circuit, and are out of step with the great weight of authority nationwide. For its part, the Eleventh Circuit has been unsympathetic to arguments like Brannan's that the information needed to shape and formulate her claims is unknown to her without the benefit of discovery. *See Franklin v. Curry*, 738 F.3d 1246, 1252 n.6 (11th Cir. 2013) ("Far from excusing her insufficient pleadings, this admission [that plaintiff does not know the factual details underlying her claims] only reinforces our conclusion that her complaint was due to be dismissed. In any event, Franklin cites no legal basis for her contention that her lack of knowledge should relax the pleading standard to which she is held."). Indeed, so has the First Circuit, in an opinion predating *Menard*. *See Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 56 (1st Cir. 2012) (where plaintiff "faults the judge for dismissing his complaint without giving him the chance to fire up the pretrial-discovery process," explaining that "to access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test" in order to "keep defendants from wasting time and money in discovery on 'largely groundless' claims").

facts which are recited in the pleading tend to negate any liability for defendants on a deliberate indifference theory because they demonstrate that Goodman was not a known suicide risk and that defendants contacted emergency medical personnel immediately after discovering Goodman unconscious in his cell. Plaintiff's alternative theory – that defendants violated Goodman's constitutional rights by subjecting him to excessive force in an interrogation, then staged his cell to make his death appear to have been suicide by hanging – is entirely speculative and lacking any supporting factual allegations that might reach a plausibility threshold. Under these circumstances, plaintiff is not entitled to subject defendants to the expense and burden of discovery, limited or otherwise, as she hunts for facts that might support colorable claims against these defendants. Brannan simply has not pleaded enough facts to unlock the doors of discovery within the parameters of *Twombly* and *Iqbal*.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Dismiss First Amended Complaint (doc. 20) is **granted**, and this action is **dismissed without prejudice**;
2. Plaintiff's Motion to Allow Limited Discovery (doc. 24) and Motion to Conduct Discovery (doc. 27) are **denied**; and
3. A separate judgment will enter.

DONE and ORDERED this 22nd day of March, 2018.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE